Good morning, Your Honors. Charles Fleishman appearing. Good afternoon. For the plaintiff and appellant, Mrs. Miscellany. This is an ERISA case. And the issue is whether or not the decision of the of the plan to deny or to terminate Miscellany's disability benefits under the Antioch test was arbitrary and capricious under the modified arbitrary and capricious way of examining it per Abadie and Glenn. This court had a trial. I'm sorry. This court had a trial. This was in the district court. Yes. Yeah. The district court ruled in favor of the defendant and were appealing. First, the standard of review, I think that the district court applied the wrong standard of review. He recognized that there was an inherent conflict between Lena, the insurance company, and its actions as a plan. Did Mr. Judge say that even the noble, he would rule the same way? Yes, he did. So it doesn't really matter, does it? I mean, you know, we have essentially parallel rulings from the district court. And so the fact that the court may have thought one standard applied and it was wrong, it doesn't matter. The other standard would come up the same way. And we we don't review that over. We review differentially for the district court. Were you? Yes. Differentially, what the district court did. But you review his decision based upon the abuse of discretion standard review de novo. Now, you're right. He did say that he would find if he had reviewed it under the de novo standard, he would still have found for the defendant. So why doesn't that drop out? Whatever he said about abuse of discretion drops out. We now look at his ruling and he says, I find de novo that this is the case. And why don't we have to defer to that? OK, I see the point. But under de novo review, we might have been able to introduce additional evidence if there was something missing. I have been able to is, you know, if there was additional evidence you had, you should have mentioned it below. And certainly you should say it now. What is this other evidence you would have introduced? And, you know, we don't speculate. You don't say, well, well, you might have. We're going to send it back and have you try again. If you think that this court is applying the wrong standard, you're saying, look, we want additional evidence because of the standard review. You need to make a record. You didn't make that record. Well, he didn't tell us that he was going to find them all. In that case, you weren't confined, were you? In that case, you couldn't provide whatever evidence you had, hoping that he would apply de novo standard. The standard didn't really affect your ability to present evidence. Well, if we all agree, I'm sorry. It wouldn't have affected. I'm sorry, did you just have another question? After you. I thought you were answering my question. I was. You were saying, I thought what you were saying is if you know the standard was different, you might have presented other evidence. But now you're telling me you didn't know what the standard was. So why didn't you present all the evidence you had? No, I knew exactly what the standard was. I knew it was an abuse of discretion standard of review. And I thought that's the one he was going to be applying, a modified abuse of discretion standard of review. Well, let me ask you, assuming it's de novo standard, is the district court still required to consider the structural conflict of interest and the fact that the Social Security Administration found disability here? No to the first one, but yes to the second one. The district court doesn't have to take into account the conflict of interest because he can view all the facts de novo and he doesn't care what they said or what their decision was. Yes to the second one because this court has ruled that Social Security is an important fact to take into consideration when you determine whether or not a person is disabled or not. So your argument is essentially, if I understand it correctly, that his failure to address the grant by Social Security is a defect even under de novo review. And there are a lot of other defects, yes. And there are a lot of other defects even if he were to have based his decision as he says he did under the de novo standard. We don't know that he didn't consider it, right? All we know is that he didn't say anything about it. Well, we know he didn't. This was presented, right? The award was presented, but I think the Montour case says that you have to go behind the award or the plan is supposed to go behind the award and presumably a judge doing a de novo review should do the same thing, go behind the award and see what the Social Security administration based it on. And maybe that's the additional evidence we could have introduced under Mangalusa if we had known he was going to do a de novo review. You know, the records from the Social Security administration. I'm sorry, what prevented you from delivering evidence? There's no new evidence under an abuse of discretion standard of review, and we had virtually stipulated that that's the standard of review. There was never any question about de novo applying here. So why would I think to go out and get that evidence when I know it's inadmissible under abuse of discretion? I'm sorry, you said you had stipulated it? Well, we had it. There was never any. We never challenged the standard of review. We always, everybody agreed it was abuse of discretion standard of review. So you're arguing plain error here? You're arguing plain error? Yes. If it's de novo, yeah. Yeah. If you're looking at, if you're saying the judge made the decision de novo, yes, there's plain error, there's a lot of error. He didn't take into consideration the social. Your argument is that the applicable standard of review, then, is plain error because you didn't raise objection below. In fact, it's invited error if you stipulated it. I'm not following. If you stipulated that the proper standard is abuse of discretion, that's called invited error. It's beyond plain error. It's something that we seldom review on appeal. If you told the district court, rule like this, and district court does what you say. Yes, I agree. But I'm not claiming that the error of the district court was the application of the abuse of discretion standard of review. I'm saying he was correct in applying that standard of review. He applied it incorrectly. Counsel, could I ask you a question, please? Did the district court here apply his own sense of abuse of discretion after our body, after our NBANC body decision was entered? Yes. Or afterwards. But he did not apply in this abuse of discretion assessment. He didn't apply the standard stated in a body, right, because he did not consider structural conflict of interest. He said he considered the structural conflict of interest, and then he said that those words were something. If I could have just a moment. Thank you. He found, he said on page 337, lines 20 through 22, the court has thoroughly reviewed the evidence and considered the issue of conflict of interest. The court finds that there is no evidence that Luna should face closer scrutiny. Now, that was kind of ambiguous as to what that means by closer scrutiny. But on the next page, that's 338, on line nine, he begins, review under the clearly erroneous standard is significantly differential, requiring a definite and firm conviction that a mistake has been committed. That is not the test for a conflicted fiduciary after a body in Glenn. And then the next heading he's got here on the same page, beginning on line 20, says the court finds that there was a reasonable basis for Luna's decision. That's not the test. That's Montour. That was the test in Jordan, and Montour got rid of that and said that that is not the right test when you have a conflicted, even if it's just a structurally conflicted fiduciary. So he applied, he was right to apply abuse of discretion, but he applied it wrongly in that he did not apply the modified abuse of discretion. He came to the conclusion that there was no reason to deal with any skepticism whatsoever. And there was plenty of reason. First of all, he completely ignored the decision of Judge King in the first saline case where Judge King found that she was totally disabled from her own occupation. And then the trial judge and the defendant in this case took when they went in to examine the issue. They completely ignored that finding by Judge King and relied on a report by Dr. Gerstenblit, who found, quote, no reason why the plaintiff should have missed one day of work, which is, of course, completely at odds with what Judge King found after a trial with all the parties, you know, The trial judge in Saline 2 completely disregarded the results of Saline 1. And I notified the court of a case that just came out this past week from Ohio, the Southern District of Ohio, which seems to be pretty much dealing with the same issue. There was a trial in one arrested case, and then the same, and they found that she was disabled from sedentary work and couldn't perform her own occupation. There was a remand back to the defendant for a decision whether she could perform the ENIAC test, and they completely disregarded the original findings in the original trial. Good afternoon, Your Honors, and may it please the court. My name is Dan McGuire, and I'm here to represent the defendant and appellee to Floor Corporation LTD Plaintiff. I think there are two questions that are presented before the panel today.  The first one is whether the district court afforded the proper amount of deference to Lina's claim determination. And second, if not, was that nevertheless harmless error. Under Abadi and Glenn, the district court in this case conducted a facts and circumstances analysis of the claim and also considered Lina's structural conflict of interest in determining that Lina did not abuse its discretion. But most importantly, because the district court determined that it would have reached the same result even under a de novo review, the precise amount of deference that the court applied was not outcome determinative, because even with no deference, the court would have reached the same result. And I think this point was perhaps best illustrated by this Court. Does that mean that we're powerless to review what he did? No, Your Honor, you're not powerless to review what he did. So what should we be looking for? Whether or not the first question would be whether or not there's error that's reversible error as opposed to harmless error. Well, the problem I have with this case is our own Montour case, which seems to impose additional requirements even in a de novo context. You heard my question opposing counsel. He disagrees with respect to Abbatee, but with respect to the social security determination, there's nothing in the record in which he can recite that he took that into account. And if I read Montour correctly, it seems to impose that kind of duty. Your Honor, the district court did take that into account, and it can be found at ER 337 lines 20 through 338 lines 9A. I'm sorry. I gave you the wrong site. I apologize. It's ER 347 line 13 through 347. Okay. And you're reading from what? The district court's opinion where they address the social security issue. Okay. Finally, Selina appears to contend that Lina abuses discretion in not accepting the SSA benefit payment to conclusively establish total disability. The policy of the 9th Circuit has long held, however, that the SSA award is not binding on the administrator. And then it goes on, discussion of that until another couple of paragraphs later. But that's what you're relying on. That was in response to Judge O'Scanlon's question. That's exactly what I meant. Responding to Judge O'Scannon's question, you cited line 13, but you didn't need to limit it to line 13. You meant like, I know it wasn't in your mouth, but just remember to continue the discussion. It starts on line 13 and maybe at least continues to the next page, at least line 5, the next page. Yes, Your Honor. Okay. And I think the point about this being harmless error perhaps is best illustrated by this court's own decision in Pannebecker v. Liberty Life, and that's 542 F. 3rd, 1213. In that case, the district court converted the standard of review at trial to de novo using the old Atwood burden-shifting test and held in favor of the administrator. But then a beta came out, which would have compelled a deferential standard of review. But this court found no error. The court found that de novo is a more rigorous standard, and it would be unlikely that the district court would reverse its decision under a more deferential standard. So likewise here in this case, even if the court were to find that the standard of review applied by the district court should have been more stringent, even to the vanishing point, there would be no error, and the judgment should be affirmed. In our case, however, the record shows that the district court applied the correct amount of deference based on its facts and circumstances analysis. It cited and discussed Abadie and Glenn. It took into account the structural conflict and assessed whether or not that structural conflict motivated the claim decision. The plaintiff didn't introduce any extrinsic evidence of bias, and looking at the administrative record, the court found that there was no evidence that Lina should face closer scrutiny. Then the court goes on to summarize why, and that's at ER 337, starting at line 21. The court said that after the remand, Lina paid the benefits through the own-occupation period and then into the any-occupation period during its investigation. It obtained all updated medical records, physical assessment forms, a nurse review, a peer review by a board-certified doctor. An in-person, independent medical examination, which this court has found not only in Montauk but in other cases, is an important factor to consider. And also a second peer review by a neurosurgeon to analyze a report that was submitted on appeal by Ms. Salinas. Therefore, even though the district court's decision here predated Montour, the court conducted the exact same type of balancing analysis using many of the same case-specific factors that were identified by the Montour court. The quality and quantity of the medical evidence, whether or not an in-person medical review had been conducted, whether the experts were given the relevant evidence, and whether the administrator considered the contrary Social Security Administration decision. In terms of the medical evidence, the IME by Dr. Hector was based on a review of all the treating doctor's notes dating back to 1994. And that shows under Montour that they got all the relevant evidence. He also reviewed the chiropractor's notes, x-rays, MRIs. He took a detailed history from the patient, listened to her complaints, found out what medication she was on, conducted a complete physical exam, checked range of motion, reflexes, motor strength, did orthopedic tests, a sensory exam, and perhaps most importantly, observed her throughout the exam where she demonstrated no pain behaviors. She was up and down off the table. Counsel, we have a 20HA letter from Mr. Fleischman which draws our attention to another district court proceeding a case called Holler v. Hartford Light. What's your response to that? I read that, Your Honor. It didn't seem to me to have too much of an impact on our case in light of the Ninth Circuit authority. It sounded like it was a case where there was an original trial based on a deferential standard of review and then a second trial based on a deferential standard of review, but under any occupation standard rather than an own occupation standard. It's distinguishable for various reasons. Every case is different. The facts and circumstances are different. But I think the most important distinction is that it was an Ohio case, so it's not subject to our Abate and Montour cases. Correct, Your Honor. So I would contend it's not even persuasive. You mean the brilliant Abate opinion? Let me ask you about the point of the finding of the first district judge in the temporary disability case. Is that fair? We understand each other, Your Honor. Okay, please. The court in that case had a different issue than the court's opinion that you're reviewing. Its issue was whether or not under a de novo standard of review, Ms. Selene was entitled to benefits under an own occupation standard of disability. So we had a different test for disability, ONOC versus ENOC. And just to focus the question, so there was a finding, which is now final, that she was unable for at least a two-year period to perform her own occupation. Correct. And what about that passage that counsel refers to where the judge says she shouldn't have missed a day of work? In the review of the ENEOC determination, one of the doctors that submitted a report said that she shouldn't have missed a day of work based on the evidence that he saw. Right. That's correct. This was not a finding by the district court. This was a finding by the doctor. Correct. Yeah, that was not a finding by the district court. Right. And the review by the ENEOC patient doctors and vocational rehabilitation people was based on additional evidence in terms of what I already discussed and discussed in the brief, the independent medical examinations, the updated medical records, the observations, the activities of Ms. Selene, the cooking, the cleaning, and the other items. So that was his opinion based on the medical evidence. So if I understand your position is this is a finding that's binding on Lena as a party, but a doctor could have a different view. No, I don't think that's my position, Your Honor, and let me explain it this way. The determination by Judge King in Selene 1 was that she was entitled to benefits under the own occupation standard. That's binding on Lena. We had to pay those benefits. We didn't feel no way around it. We paid it. Next part of the case comes in, is she entitled to benefits under any occupation? Lina's job as a fiduciary, review all the medical evidence, send everything out for review. Based on that determination, which included the doctor's report that you just mentioned, Lina determined that she was not entitled to any occupation benefits. But Lina couldn't very well take the position we denied benefits because we think she can go back to her own job. It was barred from doing that. I wouldn't agree with that, Your Honor, because there's such a thing as the patient getting better. So in that situation. OK. OK. Fair enough. OK. OK. I have no question. Thank you. Well, thank you all for your time today, Your Honor. Thank you, Mr. McGuire. Mr. Fleischman, you're out of time, but if you'd like to take a minute for rebuttal, you may have it. A minute, three words, you know. A few words. OK. As many words as you can come into a minute. If Your Honors will look at Excerpt from Record 16, you'll see that Lina, even though lost the ONAR case, still believed that she could do her own occupation. They were told by the court that she couldn't, but they still believed it, and they functioned on that basis all along. They wrote, previous functional capacity evaluation supports claimant's ability to perform her own occupation. And they believed it, and they went, Dr. Gerstenblatt believed it, and they relied on Dr. Gerstenblatt. They never accepted that fact that she could not perform her own occupation. And if they don't believe that, how can they possibly be anything but biased and prejudiced when it comes to deciding whether or not she can do any occupation? They believed, regardless of what Judge King said, that she could still perform her own occupation, and then they were asked, can she perform any occupation? Well, if she can perform her own occupation. Why is that proof of bias? Because their minds are set. They've already said to themselves, we don't care what the judge said, she can perform her own occupation. Now you want to know whether she can perform any occupation? Well, of course she can. As a matter of fact, one of the three occupations that they gave Well, we did have a review here by a magistrate judge. We did have a review by a federal judge. It was not simply Linus reviewing at all. What you have to do is come up with something that impugns the judge's ruling. The federal judge made the same findings as Linus did. He made the same mistake. He relied on Dr. Boorstin. He also thought she should He was biased too? He had a made up his mind? I mean, I don't understand. I don't know if it's bias. I don't know if it's I don't know what caused it, but judges make mistakes. They rely on evidence that is later found out What I've found over the years is that about half the people think in all cases that judges make mistakes. It just works that way. It's what you might call an occupational hazard. Yes, and sometimes appellate courts agree with the fact that they think the judge made a mistake. And I think if you review the evidence in here Let me give you an example. One could disagree with a district judge and think he's made a mistake. But I thought he was saying something more. He was impugning some sort of bias. But the judge had no This judge had no stake in the earlier in one way or another as to whether she's disabled. He made his findings. I didn't mean to imply that the judge had a bias against my client. I'm saying Lina had a bias against my client when they decided because they knew right away that she could perform any occupation because they thought she could perform her own occupation. But the mistakes that he made is, first of all, they relied on a surveillance video that none of the doctors ever saw. And the only person that saw it and commented upon it was Judge King. And he said, it stinks. There was another surveillance that they never that they actually had that showed 38 seconds of my client doing nothing. Okay. So the evidence that they relied on didn't support their decision. And the evidence that the trial judge relied on didn't support his decision. Thank you very much. Case argued was decimated. We are adjourned. All rise. Take my glasses off. Ms. Crawford, this session stands adjourned.
judges: Kozinski, O'scannlain, Gould